UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WS PACKAGING GROUP, INC.,

Plaintiff,

v. Case No. 06-C-674

GLOBAL COMMERCE GROUP, L.L.C.,

Defendant.

---

**DECISION AND ORDER**

---

Plaintiff WS Packaging Group, Inc. ("WS") brought this action for declaratory relief against Defendant Global Commerce Group, L.L.C. ("Global") seeking a determination that WS is not infringing on Global's patent for internet game pieces, U.S. Patent No. 6,406,062 ("the '062 patent"). The case is presently before the court on Global's second motion to dismiss. Global previously sought dismissal on the ground that there was insufficient evidence of an actual case or controversy sufficient to warrant this court's exercise of jurisdiction. Global's motion was denied by order of September 6, 2006. Global now argues that its waiver of infringement claims set forth in its new motion removes any case or controversy, and thus strips this court of jurisdiction. For the reasons set forth below, Global's second motion will also be denied.

**BACKGROUND**

The facts giving rise to the case are set forth in my previous decision and will not be repeated here, except to note that both WS and Global create and sell Internet game pieces. The

game pieces are used in advertising programs and sales promotions for other companies. Fearing that Global intended to sue it for infringement of its '062 patent, WS brought this action for declaratory relief. In its renewed motion to dismiss, filed on September 17, 2006, Global claims that it has waived its right to pursue any claim of infringement against WS. Global's waiver, set forth in its motion, reads as follows:

> Global Commerce Group, LLC hereby waives any right which it may presently have or which it may have had to date, and it hereby unconditionally agrees to not sue WS Packaging, Inc., for infringement of any claims of U.S. Patent No. 6,406,062 as it presently reads based on any product which was manufactured, used, sold, or imported by WS Packaging through the date on which this waiver is filed in court.

(Second Mot. Dismiss. at 1-2, Dkt #18.) In the brief supporting the motion, Global emphasizes it does not intend the waiver to extend to any future claim Global may have against WS for infringement of the '062 patent based on "any product made, used, sold, or imported." (Def.'s Br. In Supp. at 3.) Global argues that under controlling precedent and in light of the differences among promotion-specific game pieces, this waiver is sufficient to remove the "actual controversy" requirement.

**ANALYSIS**

Because the presence of an actual controversy requires a case-by-case analysis, few generally applicable rules exist. However, the Federal Circuit has provided some important guideposts. First, a defendant patentee facing a declaratory judgment "can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, *or future* acts . . . ." *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995) (emphasis added). Second, a party's promise not to

pursue an infringement claim can be binding even if the promise is expressed in a motion or accompanying brief, rather than memorialized in a covenant. *Id.* at 1059. Third, a reasonable apprehension can exist only as to current products[1] or products that a party has prepared to produce. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). With respect to products not yet produced but for which meaningful preparations have been made, two important considerations arise: (1) the greater the period between the date on which the complaint is filed and the date on which potentially infringing activities will begin, the more likely no actual controversy exists; and (2) the less the potentially infringing product is "substantially fixed, particularly with respect to its potentially infringing characteristics," the more likely it is that no actual controversy exists. *Sierra Applied Sciences., Inc. v. Advanced Energy Indus., Inc.* 363 F.3d 1361, 1378-79 (Fed. Cir. 2004).

It is helpful to keep separate at least three different categories of potentially infringing products that might fall under a patentee's promise not to bring an infringement suit: (1) products made (or sold, marketed, or used) before the date of the promise, (2) products made after the promise date but identical in design to ones made before that date, and (3) products for which meaningful preparations have been made and whose design, with respect to potentially infringing characteristics, has been substantially fixed. A promise not to bring an infringement claim, if it covers only the first category but not the second, does not remove the reasonable apprehension of suit where, as here, the purported infringer claims to be making the product on an ongoing basis. In such a scenario, the patentee could legitimately bring an infringement claim the day after

---

[1] As the subsequent discussion indicates, "current products" refers to products currently available in the sense that they are fully developed, rather than to products already manufactured and actually sitting on the shelf.

promising not to do so. Similarly, a promise not to bring an infringement claim after a certain date could very well fail to remove the actual controversy if the promise did not cover products in category (3), that is, situations wherein the product has never been fully manufactured (not even once), but has been substantially fixed with respect to potentially infringing characteristics.

Global argues that under *Super Sack* a promise not to sue for infringement removes the controversy element even if the promise does not extend to claims based on future production of a current product. However, Global misreads the *Super Sack* court's holding. The court held that Super Sack's promise not to sue Chase was sufficiently strong and broad to strip the court of jurisdiction over the claim,[2] precisely because Super Sack, in its own words, "unconditionally promised not to sue Chase *in the future* for infringement of the patents-in-suit with respect to *any products currently manufactured or sold* by Chase." *Super Sack Mfg. Corp.*, 57 F.3d at 1057, 1059 (quoting Super Sack's reply brief) (emphases added). In other words, Super Sack promised, *inter alia*, not to sue Chase for infringement with respect to *future* production of a *currently available* product.

Global's promise lacks a similar reach. WS admits to *ongoing* production of game pieces that purportedly infringe the '062 patent. In order to remove WS's reasonable apprehension of suit, Global's promise would need to extend to suits it could bring in the future based on WS's ongoing manufacture of these products.

---

[2] The claim was actually a counterclaim. Super Sack, the patentee, had sued Chase for infringing two patents. Defendant Chase denied and counterclaimed for declaratory judgments of both non-infringement and invalidity. Thus, unlike the typical posture in a declaratory judgment action involving patents, the defendant was seeking the declaratory judgment.

The *Super Sack* court was careful to distinguish among Chase's current products, products for which Chase had made meaningful preparation, and products Chase might yet develop. "[A]lthough Chase may have some cause to fear an infringement suit under the . . . patents based on products that it may develop in the future, Chase has no cause for concern that it can be held liable for any infringing acts involving products that it made, sold, or used on or before . . . the day Super Sack filed its motion to dismiss for lack of an actual controversy." *Id.* at 1059. The court also noted that Chase never contended it had prepared to make a new product that may later be said to infringe. *Id.* at 1059-60. Thus, Super Sack's promise not to sue was sufficient to remove any controversy, for it reached to the extent of Chase's present activity, which, with respect to the patents-in-suit, was limited to past and ongoing production of already-developed items. *Id.* "Chase can have no reasonable apprehension that it will face an infringement suit on the . . . patents with respect to past *and present* products . . . ." *Id.* (emphasis added).

To buttress its argument, Global cites a later Federal Circuit case also dealing with the effect of a promise not to sue for infringement, *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999), but there, too, Global misreads the court's holding. Quadlux covenanted not to "assert any claim of patent infringement against Amana under [the patent] as it presently reads, with respect to any product *currently* advertised, manufactured, marketed or sold by Amana, or any product which was advertised, manufactured, marketed or sold by Amana prior to the date of this declaration." *Id.* at 855 (quoting Quadlux covenant) (emphasis added). To Amana's argument that the covenant did not remove Amana's reasonable apprehension of being sued with respect to "new products," the court responded that "an actual controversy cannot be based on a fear of litigation over future products." *Id.* Read in context, and especially in light of the court's explicit reference

to the *Super Sack* holding, the court's reference to "future products" can refer only to "new products," that is, products not yet developed, rather than to current, already-developed products that might (again) be manufactured at a future date. In order to remove Amana's reasonable apprehension of suit, Quadlux's covenant did not need to cover new, as-yet-undeveloped products, for such products are not considered part of one's "present activity." No reasonable apprehension of suit is possible with respect to products that have not been developed or products toward the making of which a party has not taken meaningful preparatory steps.

Global also argues that game pieces are so promotion-specific that any game piece WS makes (or made) for a promotion occurring after the date of Global's waiver would constitute a new and different product, and therefore fall outside the waiver. *See Sierra Applied Sciences, Inc.*, 363 F.3d at 1371 (finding that Sierra had "developed three distinct, technologically different power supplies . . . and that jurisdiction must be separately considered as to each"); *Amana Refrigeration, Inc.*, 172 F.3d at 855 ("An actual controversy cannot be based on a fear of litigation over future products."). Global points out that each promotion calls for significant changes in the game pieces—that is, changes in the artwork, in the hidden message, and in the "image-serving software," and perhaps also a different medium for the game piece. (Def.'s Reply Br. at 6-8.) Assuming such factual allegations are true and construing them in the light most favorable to the non-movant, I do not find Global has shown that such changes would constitute a new product for jurisdiction purposes. The game piece variations from promotion to promotion do not appear to go to the potentially infringing characteristics, namely, the technology allegedly covered by the '062 patent. Rather, it appears that the game pieces WS might make for future promotions, insofar as WS has already prepared to produce them and insofar as the pieces utilize the message-revealing technology

allegedly covered by the '062 patent, are "substantially fixed, particularly with respect to [their] potentially infringing characteristics." *Sierra Applied Sciences, Inc.,* 363 F.3d at 1379. These variations, then, would not constitute a new product, and would not remove the controversy element.

## CONCLUSION

Global's waiver does not extend to future infringement suits based on WS's ongoing production of game pieces allegedly infringing the '062 patent. Therefore, I find that the waiver has not removed WS's reasonable apprehension of suit with respect to infringement of that patent. This by itself is a sufficient basis for my decision. However, I am not persuaded by Global's second argument that each new promotion calls for such a new, different game piece that WS's apprehension of suit is directed only at future products.

For the above reasons, **IT IS ORDERED** that defendant's motion to dismiss (Docket #18) be hereby **DENIED.** The clerk shall set this matter back on the court's calendar for a Rule 16 scheduling conference.

Dated this 20th day of October, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge