UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WS PACKAGING GROUP, INC.,

      Plaintiff,

v.                                                   Case No. 06-C-674

GLOBAL COMMERCE GROUP, LLC,

      Defendant.

**DECISION AND ORDER DENYING MOTION TO DISMISS**

Plaintiff WS Packaging Group, Inc. ("WS") brought this action for declaratory relief against Defendant Global Commerce Group, LLC ("Global"), seeking a determination that WS is not infringing on Global's patent for internet game pieces, U.S. Patent No. 6,406,062 ("the '062 patent"). The case is presently before the court on Global's fourth motion to dismiss. For the reasons set forth below, Global's motion will be denied.

**BACKGROUND**

The facts giving rise to the case are set forth in my previous decisions and will not be repeated here, except to note that both WS and Global create and sell Internet game pieces. The game pieces are used in advertising programs and sales promotions for other companies. Fearing that Global intended to sue for infringement of the '062 patent, WS brought this action for declaratory relief so as to clear the air regarding its ongoing manufacture of allegedly infringing game pieces. Global sought dismissal on the ground that the evidence of an actual case or controversy was insufficient to warrant this court's exercise of jurisdiction, but that motion was

denied. (Order of September 6, 2006, Dkt. #16.) Global then crafted a waiver of infringement claims, set forth in its second motion to dismiss, which read as follows:

> Global Commerce Group, LLC hereby waives any right which it may presently have or which it may have had to date, and it hereby unconditionally agrees to not sue WS Packaging, Inc., for infringement of any claims of U.S. Patent No. 6,406,062 as it presently reads based on any product which was manufactured, used, sold, or imported by WS Packaging through the date on which this waiver is filed in court.

(Second Mot. Dismiss. at 1-2, Dkt #18.) In its brief supporting the motion, Global emphasized it did not intend the waiver to extend to any future claim Global may have against WS for infringement of the '062 patent based on "any product made, used, sold, or imported." (Def.'s Br. In Supp. at 3, Dkt. #18.) I found that the waiver did not remove WS's reasonable apprehension of suit[1] because it did not extend to future infringement suits based on WS's ongoing production of allegedly infringing game pieces. Global's second motion to dismiss was therefore denied, by order of October 23, 2006.

Global then moved the court to dismiss the action a third time, based on a more expansive waiver:

> Global Commerce Group, LLC hereby waives any right to sue WS Packaging, Inc. ("WS"), for infringement of any claim of U.S. Patent No. 6,406,062 as it presently reads based on any product which was, or hereafter is, manufactured by WS. This waiver is expressly provided solely to WS, without any right to pass on or otherwise sublicense the same to others.

---

[1] As discussed below, the Federal Circuit, responding to the Supreme Court's January 2007 decision in *MedImmune, Inc. v. Genentech, Inc.*, — U.S. ----, 127 S. Ct. 764 (2007), has recently set a new standard for declaratory judgment jurisdiction in patent cases. However, the former standard—reasonable apprehension of imminent suit—applied in the first three motions to dismiss brought by Global. *See Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1379-80 (Fed. Cir. 2007) (discussing the former standard and the Supreme Court's rejection of it in *MedImmune*).

2

(Third Mot. Dismiss at 1-2, Dkt #29.)  In its third motion to dismiss, Global noted that the parties' covenant not to sue is still in effect as well.  The covenant is part of the settlement agreement that emerged after an earlier licensing dispute between the parties.[2]  Section 21 of the covenant reads:

> The parties agree not to institute any action, proceeding or arbitration against the other based upon any claims, obligations or liabilities released and discharged above, or the use of any manufacturing technology (whether methods, apparatus, or know-how) currently in use by each respective party, except as provided in this Settlement Agreement.

(Third Mot. Dismiss at 2, Dkt #29.)  In denying the third motion to dismiss, I concluded that the cumulative effect of the revamped waiver and extant covenant did not remove WS's reasonable apprehension of imminent suit, given the evidence of Global's threats to WS's customers and given WS's indemnification agreement with one of its customers.  (Order of January 24, 2007, at 5-6.)

> Global has taken yet another kick at the can, and has covenanted not to sue as follows:
>
> Global Commerce Group, LLC hereby waives any right to sue WS Packaging, Inc. ("WS"), for infringement of any claim of U.S. patent No. 6,406,062 ("the '062 Patent") as it presently reads based on any product which was, or hereafter is, manufactured by WS.  This waiver is expressly provided solely to WS, and to those customers of WS who WS had contracted to indemnify from suit by Global with respect to the '062 Patent as of the time that WS filed the complaint in the present action, and it is expressly given without any right to pass on or otherwise sublicense the same to others.

(Fourth Mot. to Dismiss at 2, Dkt. #40.)  Based on this covenant, Global argues in its fourth motion to dismiss that the court lacks subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**ANALYSIS**

In reviewing the plaintiff's complaint in regard to any motion to dismiss, the court is to assume all well-pleaded facts are true, and all such facts, as well as the reasonable inferences

---

[2] This dispute led to separate lawsuits between the parties in Georgia and Wisconsin, which were settled in December 2005.  The parties' licensing agreement and business relationship also ended at that time.

3

therefrom, are viewed in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). In deciding a 12(b)(1) motion, however, the court may consider the question of jurisdiction on the basis of evidentiary matters presented by affidavit or otherwise. *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2nd Cir. 1976); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). Where the jurisdiction of the court is challenged as a factual matter, the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof. *Grafon*, 602 F.2d at 783 (citations omitted).

The Declaratory Judgment Act, in accordance with Article III of the Constitution, requires the existence of an actual controversy between the parties before a federal court can constitutionally assume jurisdiction. *See* 28 U.S.C. § 2201(a). Until recently, the Federal Circuit, employed a two-part test for determining whether an actual controversy exists in declaratory judgment actions involving patents: the defendant's conduct must have created in the plaintiff an objectively "reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity," and second, the plaintiff must have either actually produced the device or have prepared to produce it. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988*)* (*citing Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987).

However, the Federal Circuit has now discarded that standard in the wake of the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, --- U.S. ----, 127 S. Ct. 764 (2007). In *MedImmune*, the Court held that a patent licensee is not required to terminate its license agreement before seeking a declaratory judgment that the patent is invalid, unenforceable, or not infringed. *Id.* at 777. *In dicta*, the Court also criticized the "reasonable apprehension of suit" requirement,

4

stating that it "conflicts" with several cases in which the Supreme Court found that a declaratory judgment plaintiff had a justiciable controversy. *Id.* at 774 n.11. Soon thereafter, in *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007), the Federal Circuit noted the Supreme Court's rejection of the "reasonable apprehension of suit" test, and identified one new circumstance where declaratory judgment jurisdiction would be proper:

> [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*Id.* at 1381. The *SanDisk* court addressed only the first prong of the two-part test, that is, reasonable apprehension of suit, and left for another day the effect of *MedImmune* on the second prong. *Id.* at 1380 n.2. Several days later, however, in *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330, 2007 WL 942201 (Fed. Cir. Mar. 30, 2007), the Federal Circuit made clear that the dicta in *MedImmune* effectively overruled the former two-part test. *Id.* at *4-*5. In its place, the court adopted the "all circumstances" test that the Supreme Court had suggested in *MedImmune* as the proper approach. Under that approach, all the circumstances must show (1) that the party instituting suit has standing and (2) that the issue presented is ripe. *MedImmune*, 127 S. Ct. at 771-72 & n.8.

Article III standing requires a plaintiff to allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Teva Pharm.*, 2007 WL 942201 at *3 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The alleged injury-in-fact must be "personal," "concrete and particularized," and "actual or imminent." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Ripeness focuses on the defendant's conduct to determine "whether the defendant's actions have harmed, are harming, or are about to harm the plaintiff," and whether the question

5

presented is fit for judicial review, "meaning it is entirely or substantially a question of law and postponing a decision would work a substantial hardship on the challenging party." *Id.* (citation omitted). Putting all of these pieces together, the Federal Circuit announced the new test as follows:

> [A] declaratory judgment plaintiff is only required to satisfy Article III, which includes standing and ripeness, by showing under "all the circumstances" an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Id.* at *4 (quoting *Medimmune*, 127 S. Ct. at 771).

Considering all the circumstances, I conclude that the court has declaratory judgment jurisdiction here, that is, all the circumstances show that a justiciable Article III controversy exists. As to standing, the record indicates that WS faces at least imminent personal injury from Global's threats against WS's customers. Global has bragged in a trade magazine of its habit of threatening to sue (or actually suing) the customers of allegedly infringing vendors or manufacturers, presumably as a means of pressuring the parties to cease their activities or sign a license agreement. (Attach. #1 to Aff. of William Challoner, Dkt. #12.) Furthermore, William Challoner of WS attests that Donnie Causey, an officer of Global, admitted to Challoner that Global routinely engaged in this very practice. (Aff. of William Challoner ¶ 3, Dkt. #12.) Because Global's latest waiver is limited to those customers having indemnification contracts with WS as of the filing date of the instant action, it does not remove the imminent injury.[3] By virtue of Wisconsin's adoption of the UCC, a WS customer without an indemnification contract could nevertheless hold WS liable for infringement if Global decided to bring suit against that customer. *See* Wis. Stat. § 402.312(3)

---

[3] In fact, Global's careful reservation of the right to sue WS's customers not having an indemnification agreement with WS as of the filing date of this action suggests that Global intends to use such customers as proxies to pressure WS into entering a license agreement or ceasing its manufacture of the game pieces at issue.

6

("Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any 3rd person by way of infringement or the like . . . .").

Beyond the injury that might arise from having to indemnify customers, WS faces the loss of its customer base and reputation in these circumstances. Global notes that, to avoid losing customers, WS could agree to indemnify its customers, and if it wishes to avoid the risk of prosecution from customers, could simply decline to sell to any customer unwilling to waive the statutory implied warranty of non-infringement (and then raise its prices to compensate for the loss of customers). (Reply Br. at 4-6.). However, these kinds of "solutions" were roundly criticized in *MedImmune*, where the Court stated that although a declaratory judgment plaintiff may eliminate

> [an] imminent threat of harm by simply not doing what he claimed the right to do[,] . . . [t]hat did not preclude subject-matter jurisdiction [where] the threat-eliminating behavior was effectively coerced. . . . The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.

*MedImmune*, 127 S. Ct. at 772-73. Using a competitor's customers as proxies to apply pressure tactics (rather than doing so oneself) would not seem to change the analysis, given the *MedImmune* Court's underlying concern. In any event, more important here is that these proferred "solutions," under the new test articulated in *Teva*, do not undercut the existence of a justiciable Article III controversy. Indeed, quite the opposite is true, as these "solutions" indicate the extent to which Global is attempting to harm WS without having to put its patent to the test. A favorable declaratory judgment would provide WS relief, for it would clear the air as to whether WS's game pieces infringe the '062 patent. Without such clarification, Global remains free to "attempt[] extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive

7

environment of the business community with uncertainty and insecurity." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988).

As to ripeness, Global's apparent habit of targeting customers to pressure vendors or manufacturers of allegedly infringing products clearly harms WS, for the reasons already stated. The question of whether WS's products infringe the '062 patent is fit for judicial review, for it is a question of law, and postponing a decision would work a substantial hardship on WS.

## CONCLUSION

In light of all the circumstances, I am satisfied that WS has standing and that the issue of whether its game pieces infringe the '062 patent is ripe. The injury faced by WS is of sufficient immediacy and reality to warrant issuance of a declaratory judgment. Global's waiver, combined with the extant covenant not to sue, is insufficient to remove the controversy.

For the above reasons, **IT IS ORDERED** that defendant's motion to dismiss (Docket #40) be hereby **DENIED.** The clerk shall set this matter back on the court's calendar for a Rule 16 scheduling conference.

Dated this  10th  day of May, 2007.

                                                    s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge