UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WS PACKAGING GROUP, INC.,

        Plaintiff,

v.                                             Case No. 06-C-674

GLOBAL COMMERCE GROUP, LLC,

        Defendant.

**MEMORANDUM DECISION AND ORDER**

Plaintiff WS Packaging Group, Inc. ("WS") brought this action for declaratory relief against Defendant Global Commerce Group, LLC ("Global"), seeking a determination that WS is not infringing on Global's patent for internet game pieces, U.S. Patent No. 6,406,062 ("the '062 patent"). In accordance with Federal Rule of Civil Procedure 56, the court has converted Global's fifth motion to dismiss into a motion for summary judgment. Global contends that the instant litigation is barred by a covenant not to sue that was executed by the parties in connection with previous litigation. All parties have been provided the opportunity to supplement their arguments and file additional briefs so as to present any material made pertinent to the motion by its treatment under Rule 56. In addition, the court heard argument and is now prepared to address the issue on its merits. For the reasons that follow, Global's motion will be granted and the case dismissed.

The covenant not to sue set forth the in the previous written settlement agreement between the parties reads as follows:

> The parties agree not to institute any action, proceeding or arbitration against the other based upon any claims, obligations or liabilities released and discharged above, or the use of any manufacturing technology (whether methods, apparatus, or

know-how) currently in use by each respective party, except as provided in this Settlement Agreement.

(Brief Supp. Mot. Dismiss, Ex. 1.) Global argues that the instant litigation is based upon WS's use of manufacturing technology and is therefore barred by the language of this covenant not to sue. WS contends this action is not based on the use of manufacturing technology.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24.

The settlement agreement between Global and WS is subject to the traditional requirements of contract law. *See American Nat'l Prop. & Cas. Co. v. Nersesian*, 2004 WI App 215, ¶ 14, 277 Wis. 2d 430, ¶ 14, 689 N.W.2d 922, ¶ 14; *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶ 13 n. 8, 257 Wis. 2d 421, ¶ 13 n. 8, 651 N.W.2d 345, ¶ 13 n. 8. It is a release settling claims between the parties, containing a covenant not to sue. Therefore, under Wisconsin law, I must construe the language of the covenant not to sue to give effect to the intention of the parties, *Brandner v. Allstate Ins. Co.*, 512 N.W.2d 753 (Wis. 1994), "as discernible from the contract and circumstances surrounding its execution." *Peiffer v. Allstate Ins. Co.*, 187 N.W.2d 182, 185 (Wis. 1971). "Rules of construction favor an interpretation which gives a reasonable meaning to all terms over an interpretation which leaves part of the language useless or meaningless." *Fleming v. Threshermen's Mutual Ins. Co.*, 388 N.W.2d 908, 911 (Wis. 1986).

Applying these principles, I conclude that the language of the covenant not to sue does preclude WS's current action against Global. In relevant part, the covenant bars either party from instituting an action against the other "based upon . . . the use of any manufacturing technology (whether methods, apparatus, or know-how) currently in use by each respective party . . . ." (Br. Supp. Mot. Dismiss, Ex. 1.) Neither party contends that this language is inherently ambiguous. Rather, WS contends that Global has failed to identify any "use" of "manufacturing technology" challenged by this lawsuit. (Br. Opp. Sum. J. 3.)

WS argues the motion for summary judgment should be denied for three reasons. First, WS asserts that its lawsuit is based upon Global's threats of patent infringement action against WS and its customers, which are not a "use of manufacturing technology." (Id. at 6.) Second, WS notes that the covenant not to sue only covers uses in existence at the time of the earlier settlement. WS argues that even if threats of patent litigation could be considered a "use of manufacturing technology," there is no evidence such threats were occurring at the time of the settlement. Finally, WS argues that this lawsuit is not based upon the use of manufacturing technology, because the '062 patent is a product patent that does not claim any manufacturing technology. (Br. Opp. Sum. J. 6.)

The court is unconvinced. While it is true that Global's alleged threats of suing its customers for infringement of its patent may have motivated WS to seek declaratory relief against Global, those threats do not form the basis of the claim before this court. WS seeks a declaratory judgment that "WS has not infringed the '062 Patent." (Compl. 4.) Thus, the instant case is based upon WS's own actions, not any action undertaken by Global. There are, of course, other legal remedies available to address improper threats of litigation. An action for tortious interference with a contract or business relationship, or for unfair trade practices, for example, would be based on

3

improper threats directed at WS's customers and thus would not fall within the scope of the covenant not to sue. But the action for declaratory judgment presently before the court is an action based on the manufacturing technology, the know-how, WS was using to produce game pieces at the time of the settlement agreement. WS seeks a determination that its use of that technology to manufacture internet game pieces does not infringe Global's patent. And having concluded that threats are not "a manufacturing technology" and that such threats do not form the basis of WS's action against Global, it is irrelevant whether Global was threatening patent litigation at the time of the previous settlement. I therefore reject WS's second argument as well.

WS's third argument also misses the mark. WS argues that because the '062 patent is a product patent that does not claim a process or method by which the product is made, "litigation about what that patent covers does not implicate any manufacturing technology." (Br. Opp. Sum. J. 6.) But this action is not simply about the '016 patent. WS is not seeking a determination that the '016 patent is invalid or otherwise unenforceable; it seeks a determination that the game pieces it manufactures do not infringe that patent. In this sense, the instant lawsuit is based upon WS's use of a manufacturing technology (i.e., methods, apparatus, or know-how). WS seeks a determination that its use of that technology to produce internet game pieces does not infringe the '016 patent.

Ultimately, the issue before the court at this stage is not the proper scope of the '062 patent, but what the parties intended as the scope of the covenant not to sue. WS concedes that "in the releases and the covenant not to sue, it was WS's intent to prevent any future litigation with Global over [past] licensing agreements." (Challoner Aff. Sept. 23, 2007 ¶ 5.) WS also acknowledges that the licensing agreements "covered, among other things, Global's '062 patent." (Id. ¶ 3.) These statements support the conclusion that WS intended the covenant to prevent Global from turning

4

around immediately after the parties settled their dispute over the licensing agreement and sue WS for patent infringement. This is indeed how Global viewed the agreement. It concedes that it is barred under the covenant from suing WS for patent infringement for its manufacture and sale of the same internet game pieces it was manufacturing at the time of the settlement agreement. (Br. Reply Mot. Sum. J. 2.)

Indeed, it is unclear to the court what besides patent litigation the disputed contract language could preclude. WS contends the language does not bar patent litigation, but it offers no reasonable alternative as to what future litigation the language was intended to prevent. WS asserts that its intention "in including a covenant not to sue based on the 'use of manufacturing technology' was to prevent any future litigation with Global regarding WS's right to use the equipment and technology it was currently using." (Challoner Aff. Sept. 23, 2007 ¶ 8.) But absent the licensing agreement, which the parties had agreed to terminate, what claim other than patent infringement could Global have asserted against WS. "Contracts must be read in such a manner as to give a reasonable meaning to each provision and without rendering any portion superfluous." *DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd.*, 682 N.W.2d 839 (2004). WS's failure to suggest any other type of claim the covenant not to sue would bar is telling. If it doesn't bar this claim, it would appear that the language extending the covenant beyond the "claims, obligations or liabilities" then being released and discharged was essentially meaningless. I decline to adopt such a construction.

The circumstances surrounding the covenant's execution support the conclusion that the parties intended to avoid further litigation of any kind involving WS's production of internet game

5

pieces. WS entered into its second and final license agreement with Global in part to prevent Global from commencing patent litigation against WS. (Challoner Aff. July, 24, 2006 ¶ 7.) When WS believed Global breached the agreement that afforded it this protection, WS brought the legal action that was ultimately settled in a written agreement including a covenant not to sue. It is hardly reasonable to assume WS entered a licensing agreement to protect itself from a claim of patent infringement, but then, when the licensing agreement was breached, terminated the agreement only to subject itself to a charge of patent infringement. The court is satisfied that if Global had sued WS for infringement of the '062 patent in the days following the parties' settlement, WS could have successfully asserted the covenant not to sue as a defense. If this is true, it makes no sense to hold that WS may bring a declaratory judgment action against Global that mirrors the very action Global could not have brought against it. I conclude that WS's action for declaratory relief is barred by the parties' covenant not to sue.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment is granted and the action is dismissed with prejudice. The clerk is directed to enter judgment accordingly.

Dated this ___12th___ day of October, 2007.

                                s/ William C. Griesbach
                                William C. Griesbach
                                United States District Judge

6

Case 1:06-cv-00674-WCG   Filed 10/12/07   Page 6 of 6   Document 68